ANDERSON *v*. PIXLEY.

Opinion delivered March 4, 1918.

1. LOCAL IMPROVEMENT—PETITION—ASSESSMENT ON FILE—MAJORITY IN VALUE.—In ascertaining whether a petition for a local improvement in a city or town is signed by a majority in value of the owners of real property in the proposed district, the city council shall be governed by the county assessment on file, and it is concluded by that assessment.

2. LOCAL IMPROVEMENT—ORGANIZATION—ASSESSMENT ROLL.—The last assessment roll prior to the organization of the district is the only

criterion by which to ascertain the total valuation of real property within the boundaries of the district.

3. LOCAL IMPROVEMENT—ORGANIZATION—MAYOR AS COMMISSIONER.— A local improvement district, otherwise validly organized, is not rendered invalid by the appointment of the mayor of the city as a member of the board of improvement commissioners. The mayor may be at least a *de facto* member of the board, and its proceedings are valid until he is removed.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Fred A. Snodgress,* for appellant.

1. The mayor was disqualified to act as commissioner. Kirby & Castle's Digest, § § 6677-8-9-80, 6843.

2. The second petition did not contain a majority in value of the real property in the district. 99 Ark. 521.

*Rose, Hemingway, Cantrell, Loughborough & Miles,* for appellees.

1. The mayor was a proper member of the board. 97 Ark. 334.

2. The petition was signed by a majority in value. 99 Ark. 508; 127 *Id.* 418.

HART, J.  This was a suit in equity brought by appellants as owners of real property within the boundaries of a proposed improvement district in the city of Argenta, now North Little Rock, Arkansas, against appellees as board of commissioners of said improvement district to declare invalid the formation of said district. The chancellor upheld the validity of the district, and the case is here on appeal.

The validity of the district is attacked on two grounds. First, that the second petition did not contain a majority in value of the real property within the boundaries of the proposed district; and, second, that the mayor of the city could not legally be appointed as one of the commissioners of the district.

The second petition came on for hearing on the 6th of August, 1917, and it was found that a majority in value of the owners of real property within the district had

signed the petition. The appellants offered to prove that a school building situated within the boundaries of the district was assessed in 1915 and 1916 for $27,200 and in 1917 for $125,000; that the school building in 1917 was in the same condition as it was during the years 1915 and 1916; that the amount for which it was assessed in 1917 was far in excess of its value.

It appears from the record that if the school building had been assessed in 1917 for the same amount that it was assessed for during the years 1915 and 1916, that the petition would have contained less than a majority in value of the real estate in the district. The court properly refused to consider this testimony. In the case of *Improvement District No. 1 of Clarendon* v. *St. Louis Southwestern Railway Co.*, 99 Ark. 508, it was held that in ascertaining whether a petition for a local improvement in a city or town is signed by a majority in value of the owners of real property in the proposed district, the city council shall be governed by such county assessment on file and that it is concluded by that assessment.

In the case of *City of Malvern* v. *Nunn*, 127 Ark. 418, it was held that the last assessment roll prior to the organization of the district is the only criterion by which to ascertain the total valuation of real property within the boundaries of the district. In that case it was also held that school property has a voice in the organization of a district according to its value fixed by the assessment roll.

It is next insisted that the organization of the district was invalid because the mayor of the city within which the proposed district was situated was made a member of the board of commissioners.

In the case of *McDonnell* v. *Improvement District No. 145, Little Rock*, 97 Ark. 334, it was held that a member of the city council was not disqualified to serve as a member of an improvement district within the city. The court said that the duties of the two positions were not incompatible with each other. The Legislature of 1909 provided that the city council should have power, for cause,

to remove the members of the board of an improvement district within a city or town. *Carswell* v. *Hammock*, 127 Ark. 110. Our attention was not called to this statute in the case just cited. The main body of the opinion was devoted to other questions. The court only incidentally held that a member of the city council was not eligible to serve as a commissioner of an improvement district. It would have been sufficient to have held in that case that the district was not invalid for that reason. So here it may be said that the district was not rendered invalid by the appointment of the mayor as a member of the board of improvement commissioners. The acts of the board of which he was a member would be valid. Direct proceedings should have been instituted to remove the mayor from the board on account of his ineligibility to become a member because under the statute the city council had power to remove the members of the board for cause. The mayor was at least a *de facto* member of the board and its proceedings were valid until he was removed. In short, his ineligibility to serve as a member of the board would not affect the validity of the district but would only be grounds for his removal under proper proceedings.

It follows that the decree will be affirmed.