Rogers v. Sangster.

Rogers v. Fairley.

Opinion delivered January 27, 1930.

908

*A. F. Barham,* for appellants.

*L. P. Biggs,* and *Coleman & Riddick,* for appellees.

HART, J., (after stating the facts). The chancellor held that the ordinance whereby the mayor and a majority of the board of aldermen were authorized to take over the waterworks plants and the electric light plant and operate and maintain the same was void, because they were interested parties. The decision of the chancellor was correct, and the contract was void as against public policy. The rule is of general application, and is based upon principles of reason and of public policy.

In 2 Dillon on Municipal Corporations, (5th ed.), § 773, a clear and comprehensive statement of the rule is made, which reads as follows:

"At common law, and generally under statutory enactment, it is now established beyond question that a contract made by an officer of a municipality with himself, or in which he is interested, is contrary to public policy, and tainted with illegality; and this rule applies whether such officer acts alone on behalf of the municipality, or as a member of a board or council. Neither the fact that a majority of the votes of a council, or board, in favor of the contract are cast by disinterested officers, nor the fact that the officer interested did not participate in the proceedings, necessarily relieves the contract from its vice. The facts that the interest of the offending officer in the invalid contract is indirect, and is very small, is immaterial. The statutory prohibition is frequently so wide in its terms as to prohibit any officer from contracting with the municipality, whether he takes part in the making of the contract or not."

To the same effect see McQuillin on Municipal Corporations (2d ed.), vol. 2, §§ 531, 629, and vol. 3, § 1354.

Municipal officers are held by the courts to a strict accountability in their dealings with or on behalf of the

municipal corporation; and in recognition of their incapacity to serve two masters, as an incident to the frailty of human nature, public policy has placed a disability to make a contract for the city where they are interested in it in any degree. The rule is so inflexible that no inquiry into their good or bad intention or to the fairness or unfairness of the contract is permitted. Our own court has sustained the principle in the following cases: *People's Savings Bank* v. *Big Rock Stone & Construction Co.*, 81 Ark. 599, 99 S. W. 836; *Tallman* v. *Lewis*, 124 Ark. 6, 186 S. W. 296; *Gould* v. *Toland*, 149 Ark. 476, 232 S. W. 434; and *Sloss* v. *Turner*, 175 Ark. 994, 1 S. W. (2d) 993.

Section 7520 of Crawford & Moses' Digest reads as follows:

"Nor shall any alderman or member be interested, directly or indirectly, in the profits of any contract, or job, or services, to be performed for the corporation."

The statute is merely declaratory of the common law, and the reason for it is well stated in 13 Cyc. p. 425, as follows:

"It is perhaps correct to say that public policy is that principle of law which holds that no person can lawfully do that which has a tendency to be injurious to the public, or against the public good, which may be designated, as it sometimes has been, the policy of the law, or public policy, in relation to the administration of the law. Where a contract belongs to this class, it will be declared void, although in the particular instance no injury to the public may have resulted."

Some reliance is placed by counsel for appellants on act 322 of the Acts of 1923, which authorizes the lease or sale of waterworks, gas or electric works belonging to, or operated by, municipal corporations or improvement districts. General Acts of 1923, p. 252.

In the first place, under the provisions of that act, the sale could be made by the officers of the municipal corporation in cases only where that corporation owned the

plant. Even in such cases, it would be contrary to public policy for the officers of the municipal corporation to lease or sell the plant to themselves.

In this case, however, the improvement districts own the plants themselves, and, under the statute just referred to, the sale of them would have to be made by the board of commissioners of the district.

Therefore it follows that the decree of the chancery court in each case was correct, and it will be affirmed.